IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 18-cr-20322-MSN |
| ) | |
| JAIRE SPENCER, ) | |
| ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Before the court by order of reference is defendant Jaire Spencer's Motion to Suppress, filed on January 16, 2019. (ECF No. 25.)  The government filed a response on January 30, 2019. (ECF No. 27.)  The court conducted an evidentiary hearing on February 13, 2019, and the hearing transcript was filed on March 6, 2019. For the following reasons, it is recommended that the defendant's motion be denied.

I. PROPOSED FINDINGS OF FACT

At the hearing, the court heard testimony from Memphis Police Department ("MPD") Officer James Reed, MPD Detective Cody Mills, defendant Jaire Spencer, and his father, J.T. Spencer. Both sides provided drastically different accounts of the events at issue in the instant motion.  According to the officers' testimony, sometime around noon on February 1, 2018, Detective Mills and other members of the MPD Gang Unit were instructed to

arrest the defendant at his home, located at 4791 Manson Road. (Tr. at 15-16, 39, 62, 129.) The officers were told to arrest defendant because he had threatened to shoot a police officer who had given him a citation. (Tr. at 16.) The officers did not obtain a warrant for defendant's arrest. (Tr. at 37.) Officer Reed, Detective Mills, and a third officer – none of whom had their weapons drawn - approached the residence and knocked on the door, while approximately four to seven additional officers guarded the perimeter of the residence. (Tr. at 17, 43, 56-57, 73.) Defendant's father, J.T. Spencer, answered the door. The officers asked if the defendant was home, and when J.T. Spencer answered affirmatively, the officers advised him that the defendant was the subject of an ongoing investigation. (Tr. at 17-18.) According to Officer Reed, after the officers "asked to enter the residence, [J.T. Spencer] advised that we could come in, and [J.T. Spencer] led us into the living room, and [] pointed down to the hallway and advised us that [] was where [defendant's] room was." (Tr. at 18, 44-45.) Detective Mills testified that the officers asked J.T. Spencer if the defendant "was there . . . [a]nd [J.T. Spencer] welcomed us into the house - you know, he welcomed us into the house and walked us down the hallways to [defendant's] bedroom." (Tr. at 62, 71-72.) The officers entered the bedroom and made contact with the defendant, who was only wearing underwear. (Tr. at 19-20.)

Detective Mills handcuffed the defendant, took him outside, and placed him in a squad car. (Tr. at 20-21, 65, 80.) Meanwhile, Officer Reed, who had noticed marijuana residue sitting on top of defendant's dresser, stood in the doorway of defendant's bedroom to secure the room. (Tr. at 21.) Officer Reed was also concerned that there might be a weapon in the room based on defendant's previous threat. (Id.) Shortly thereafter, the defendant asked Detective Mills if he could bring him some clothes. When Detective Mills returned to the bedroom to retrieve defendant's clothing, he noticed that one of the drawers of the dresser was partially open. Detective Mills could see a handgun through the opening. (Tr. at 23, 28, 53, 65-69; Ex. 1.) Detective Mills pointed out the gun to Officer Reed, who was able to see the gun using a flashlight. (Tr. at 54, 60.) After J.T. Spencer gave the officers consent to search the bedroom, the officers seized the firearm from the dresser. (Tr. at 48-49, 55-56, 85, 91-92.) Defendant was subsequently indicted for being an unlawful user of a controlled substance who knowingly possessed a firearm, in violation of 18 U.S.C. § 922(g)(3).

According to the testimony of the defendant and J.T. Spencer, on February 1, 2018, as J.T. Spencer was preparing to leave his house, he noticed seven or eight unmarked police cars approach his residence. (Tr. at 94.) He went back inside to

tell his wife and the defendant that the police were at the house. (Tr. at 94, 130.) At that time, the drawers to the defendant's dresser were all closed. (Tr. at 123, 134-35.) As J.T. Spencer was making his way back to the front door, the officers entered the house through the front door without permission and asked for defendant. (Tr. at 96-97.) The officers walked down the hallway and found the defendant in the bedroom attempting to get dressed. (Tr. at 97.) Defendant was handcuffed and placed in a squad car, while J.T. Spencer and his wife remained seated on their living room couch. (Tr. at 99, 130.) J.T. Spencer testified that, from the living room, he could hear at least one officer opening drawers and searching the bedroom while his son was in the squad car. (Tr. at 99.) According to J.T. Spencer, he signed a consent to search form, but did so only after the officers had already found the firearm. (Tr. at 109, 111.)

Based on the court's observation of the witnesses as they testified at the hearing and a review of the hearing transcript and exhibits, the court finds the testimony of the officers to be credible and the testimony of the defendant and J.T. Spencer to be not credible. Specifically, the court finds that (1) the officers sought and obtained permission from J.T. Spencer to enter his residence to look for defendant; (2) the drawer where the firearm was found was already partially open when the

officers initially entered the defendant's bedroom; and (3) the officers did not open any of the drawers or conduct a search of the bedroom prior to seeing the firearm.

## II. PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. Warrantless searches are "'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" Arizona v. Gant, 556 U.S. 332, 338 (2009) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). A warrantless search of a dwelling may be conducted "with the voluntary consent of an individual possessing authority." Georgia v. Randolph, 547 U.S. 103, 109 (2006); see also Florida v. Jimeno, 500 U.S. 248, 250-51 (1991) ("[I]t is no doubt reasonable for the police to conduct a search once they have been permitted to do so.").

**A. Consent**

"'[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" United States v. Thomas, 430 F.3d 274, 276 (6th Cir. 2005) (quoting Payton v. New York, 445 U.S. 573, 590(1980)); see also

- 5 -

Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) ("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (internal quotations omitted). "If an officer obtains consent to search, a warrantless search does not offend the Constitution." United States v. Moon, 513 F.3d 527, 537 (6th Cir. 2008); see also United States v. Steagald, 451 U.S. 204, 205-06 (2000). Such consent must be voluntary and freely given. Moon, 513 F.3d at 537 (citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). "Consent is voluntary when it is 'unequivocal, specific and intelligently given, uncontaminated by any duress or coercion.'" Id. (quoting United States v. McCaleb, 552 F.2d 717, 721 (6th Cir. 1977)). "The government is required to show something more than 'mere acquiescence' on the part of the defendant." United States v. Holland, 522 F. App'x 265, 274 (6th Cir. 2013) (quoting United States v. Canipe, 569 F.3d 597, 603 (6th Cir. 2009)).

"'[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" Moon, 513 F.3d at 537 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). Relevant circumstances may include the age, intelligence, and education of the individual, whether the individual understood that she had the

- 6 -

right to refuse consent, the use of coercive conduct by police, and whether the individual knew her constitutional rights. United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999); see also United States v. Frost, 521 F. App'x 484, 488-89 (6th Cir. 2013); United States v. Ables, 280 F. App'x 513, 516-17 (6th Cir. 2008). Although a police officer is not required to inform an individual of her right to refuse consent, "the absence of such a warning is considered in the totality of the circumstances analysis." United Sates v. Cowan, 704 F. App'x 519, 526 (6th Cir. 2017) (quoting Moon, 513 F.3d at 572). "The burden of proving that a search was voluntary is on the government . . . and 'must be proved by clear and positive testimony.'" Moon, 513 F.3d at 537 (quoting United States v. Scott, 578 F.2d 1186, 1188-89 (6th Cir. 1978)). "The government's showing must satisfy the preponderance standard." Holland, 522 F. App'x at 274 (citing Worley, 193 F.3d at 385).

The court finds, based upon the totality of the circumstances, the officers lawfully entered the residence because they had J.T. Spencer's consent. Only three officers approached the front door and none of them had their guns drawn. Officer Reed told J.T. Spencer that they were there to look for the defendant and he asked for permission to enter the residence, which J.T. Spencer granted. See United States v. Holland, 522 F. App'x 265, 275 (6th Cir. 2013); United States v.

Wooden, No. 3:15-cr-12, 2015 WL 13736020, at *6 (E.D. Tenn. Oct. 23, 2015), adopted by, 2015 WL 7459970 (E.D. Tenn. Nov. 24, 2015). At no time did the officers engage in conduct that could be considered coercive. J.T. Spencer was cooperative and willingly pointed them in the direction of the defendant's room. The court concludes that the government has shown, based on clear and positive testimony, that the officers obtained valid consent.

**B.  Plain View**

Under the plain view doctrine, officers may seize an item without a warrant if: (1) the item seized is in plain view, (2) the item's incriminating character is immediately apparent, (3) the officer is lawfully in the place from where the item can be plainly seen, and (4) the officer has a lawful right of access to the item. United States v. Mathis, 738 F.3d 719, 732 (6th Cir. 2013) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)); see also United States v. Galaviz, 645 F.3d 347, 355 (6th Cir. 2011) ("Under the plain-view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.") (internal quotations omitted). "'If an article is already in plain view, neither its observation nor its seizure would involve any invasion of

- 8 -

privacy.'" United States v. Barclay, 578 F. App'x 545, 550 (6th Cir. 2014) (quoting Horton, 496 U.S. at 133). The court finds that the officers lawfully seized the defendant's gun because Detective Mills and Officer Reed both saw the gun through the open dresser drawer, they had J.T. Spencer's consent to be inside the house, and the incriminating character of the gun was immediately apparent as the defendant was being arrested for threatening to shoot a police officer. Therefore, the officers did not need a warrant to seize the firearm.[1]

### III. RECOMMENDATION

For the above reasons, it is recommended that the defendant's Motion to Suppress be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 12, 2019
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**

---

[1] Based on this finding, the court need not address the effect of J.T. Spencer's consent to search the defendant's bedroom.

- 9 -