# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                      Case No. 18-cr-20322-MSN

JAIRE SPENCER,

    Defendant.
_____

## ORDER ADOPTING REPORT AND RECOMMENDATION AND
## DENYING DEFENDANT'S MOTION TO SUPPRESS
_____

    Before the Court is Defendant Jaire Spencer's Motion to Suppress and Supporting Memorandum, filed January 16, 2019. (ECF No. 25.) The Court referred the motion to the Magistrate Judge for Report and Recommendation on January 16, 2019. (ECF No. 26.) The Government filed its Response to Motion to Suppress on January 30, 2019. (ECF No. 27.) Magistrate Judge Pham held an evidentiary hearing on February 13, 2019.

    On April 12, 2019, Magistrate Judge Pham issued a Report and Recommendation (the "Report"), recommending the motion be denied. (ECF No. 35.) Defendant filed his objections to the Report on April 18, 2019. (ECF No. 36.) The Government filed a response to Defendant's objections on April 29, 2019. (ECF No. 39.) For the reasons set forth below, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation and **DENIES** Defendant's Motion to Suppress.

## BACKGROUND

On September 27, 2018, the Grand Jury returned an indictment charging Defendant with being an unlawful user of a controlled substance, who knowingly possessed a firearm, in violation of 18 U.S.C. § 922(g)(3). (ECF No. 2.) Defendant pleaded not guilty. In his Motion to Suppress and Supporting Memorandum, Defendant asks the Court to suppress "any and all physical evidence whether tangible or intangible; any statements or admissions alleged to have been made by the Defendant; any and all observations of law enforcement officers and any other tangible or intangible evidence obtained during or as a direct or indirect result from the search of he and his parents' residence located in Memphis, Tennessee . . . ." (ECF No. 25 at PageID 27.)

At the evidentiary hearing on this motion, the Government called as witnesses two officers with the Multi-Agency Gang Unit of the Memphis Police Department, Officer James Reed and Detective Cody Mills. Defendant called one witness, his father, J.T. Spencer, and Defendant also testified. As Magistrate Judge Pham noted, "[b]oth sides provided drastically different accounts of the events at issue in the instant motion." (ECF No. 35 at PageID 213.)

According to the officers' testimony, they, along with other members of the Multi-Agency Gang Unit, went to Defendant's home on February 1, 2018. (ECF 34 at PageID 56–57, 102–03.) They had been instructed to arrest Defendant because he had threatened to shoot a police officer. (*Id.*) Officer Reed, Detective Mills, and one other officer approached the residence and knocked on the door. (*Id.* at PageID 58, 103–04.) None of the officers had their weapons drawn. (*Id.* at PageID 74–75, 80, 84.) Prior to the officers approaching the residence, approximately seven to ten additional officers set up a perimeter around the residence. (*Id.* at PageID 58, 73, 84.)

Defendant's father, J.T. Spencer, answered the door. (*Id.* at PageID 58, 76, 117.) The officers asked if Defendant was at the residence, and Mr. Spencer advised he was and asked what

2

was going on.  (*Id.* at PageID 58–59, 76, 85, 118.)  The officers told Mr. Spencer that Defendant was part of an ongoing investigation, and asked Mr. Spencer for permission to enter the residence.  (*Id.* at 59, 85, 103.)  Mr. Spencer told the officers they could come in and pointed them down the hallway towards Defendant's bedroom.  (*Id.* at PageID 59, 85, 103, 119.)  The officers entered the bedroom and found Defendant in his underwear.  (*Id.* at PageID 60–61, 105–06, 120.)  Defendant was handcuffed, and Detective Mills escorted Defendant from the residence and placed him in the back of a squad car.  (*Id.* at Page ID 61–62, 93, 106, 121.)  During this time, Officer Reed remained inside the residence, standing in the doorway of Defendant's bedroom to secure the bedroom and make sure no one entered or exited.  (*Id.* at 63–64, 68–69.)

After being placed in the back of the squad car, Defendant asked Detective Mills if he could get him some clothing because Defendant was cold being outside in only his underwear in February.  (*Id.* at PageID 106.)  Detective Mills then went back inside the residence to get some clothes for Defendant.  (*Id.* at PageID 107.)  Detective Mills retrieved pieces of clothing that were lying on the bed and floor of Defendant's bedroom.  (*Id.* at 64, 107.)  At that time, Officer Reed pointed out to Detective Mills marijuana residue that he had noticed on top of the dresser in Defendant's bedroom.  (*Id.* at 63, 107.)  When Detective Mills turned to look at the dresser to see the marijuana, he noticed there was a gun sitting inside the second drawer, which was slightly ajar.  (*Id.* at PageID 64, 108.)  The gun was of concern to the officers because Defendant had made a threat to shoot an officer.  (*Id.* at PageID 70.)  Detective Mills brought the gun to Officer Reed's attention.  (*Id.* at 70, 94–95.)  Detective Mills then went to the living room to ask Mr. Spencer for consent to search the bedroom while Officer Reed remained in the hallway near Defendant's bedroom door.  (*Id.* at 95–96.)  After receiving consent to search from Mr. Spencer and Defendant, the officers seized the firearm.  (*Id.* at 111–12, 131–33.)

3

According to the testimony of Mr. Spencer and Defendant, on the morning in question, Mr. Spencer was about to leave his residence when he noticed seven or eight unmarked police cars approaching the house. (*Id.* at PageID 135.) Mr. Spencer went back inside to tell his wife and Defendant that the police were at the house. (*Id.*) As Mr. Spencer was walking back down the hallway toward the front door, the police came through the door without permission and asked if Defendant was there. (*Id.* at PageID 137–38.) The officers continued into the residence and found Defendant in the hallway attempting to put on his pants. (*Id.* at PageID 138–39.) The officers removed Defendant from the residence, and Mr. Spencer and his wife were asked to sit on the couch in the living room. (*Id.* at PageID 139–40.) While seated in the living room, Mr. Spencer could hear officers opening his son's dresser drawers and searching the bedroom. (*Id.* at PageID 99.) Mr. Spencer signed a consent to search form, but this was only after the officers had searched Defendant's bedroom and found the firearm. (*Id.* at PageID 150.)

Magistrate Judge Pham found "the testimony of the officers to be credible and the testimony of the defendant and J.T. Spencer to be not credible." (ECF No. 35 at PageID 216.) Ultimately, Magistrate Judge Pham concluded that

> (1) the officers sought and obtained permission from J.T. Spencer to enter his residence to look for defendant; (2) the drawer where the firearm was found was already partially open when the officers initially entered the defendant's bedroom; and (3) the officers did not open any of the drawers or conduct a search of the bedroom prior to seeing the firearm.

(ECF No. 35 at PageID 216–17.)

## **STANDARD OF REVIEW**

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion." 28 U.S.C. §

4

636(b)(1)(B). The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).

The standard of review the district court applies depends on the nature of the matter considered by the magistrate judge. "[U]pon proper objection by a party, a district court must review *de novo* a magistrate judge's ruling on a motion to suppress." *United States v. Quinney*, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001)). The Court need not review—under a *de novo* or any other standard—those aspects of a report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150–52 (1985). Objections to any part of a magistrate judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *see also Arn*, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide *de novo* review where the objections are '[f]rivolous, conclusive or general.'" (internal quotation marks omitted)).

## DISCUSSION

### A. Factual Findings

Defendant objects to several of the Magistrate Judge's findings of fact. First, Defendant objects to the finding that the testimony of Officer Reed and Detective Mills is credible, and that his testimony and that of his father is not credible. (ECF No. 36 at PageID 222.) Second, he objects to the finding that the officers asked for and were given permission by Mr. Spencer to enter

the residence to look for him. (*Id.*) Third, he objects to the finding that the dresser drawer in which the firearm was found was partially open when the officers initially entered Defendant's bedroom. (*Id.*) Finally, he objects to the finding that the officers did not open any of the drawers or conduct a search prior to seeing the firearm. (*Id.* at PageID 223.)

Having presided over the evidentiary hearing, Magistrate Judge Pham "had the opportunity to view [each] witness on the stand and assess [the witness's] demeanor," *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001), and thus is "in the better position to assess the credibility of witnesses" he heard during the evidentiary hearing. *United States v. Woodruff*, 830 F. Supp. 2d 390, 402 (W.D. Tenn. 2011) (Mays, J.) (quoting *United States v. Robinson*, No. 1:07–CR–1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *United States v. Brown*, No. 1:07–CR–9, 2007 WL1345463, at *1 (E.D. Tenn. May 7, 2007); *see also United States v. Tyler*, 2:10-CR-20124-STA, 2011 WL2551177 (W.D. Tenn. June 27, 2011); *United States v. Tuggle*, No. 2:10–cr–20042–JPM–tmp, 2011 WL 692812, at *1 (W.D. Tenn. Feb. 18, 2011) (quoting *United States v. Freeman*, 412 F. App'x 735, 743 (6th Cir. 2010)).

Upon a *de novo* review of the record, the Court finds no reason to question Magistrate Judge Pham's assessment of the witnesses and their testimony. There is no objective evidence that contradicts the officers' testimony, and the testimony itself is not "so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *U.S. v. Haynes*, 301 F.3d 669, 679–80 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)).

Accordingly, Defendant's objections to Magistrate Judge Pham's proposed findings of fact are **OVERRULED**.

B. <u>Conclusions of Law</u>

Defendant objects to Magistrate Judge Pham's conclusions of law that Mr. Spencer "gave valid legal consent to enter the residence" and "that the firearm was in plain view for the officers to find." (ECF No. 36 at PageID 225–26.)

First, Defendant's objection to the conclusion that Mr. Spencer gave valid legal consent to enter the residence appears to be another objection to the Magistrate Judge's credibility determination. This Court has addressed this issue, and to the extent Defendant is making an objection to the credibility determination of the Magistrate Judge or the proposed findings of fact, that objection has been overruled (see above). To the extent Defendant objects to the legal conclusion that Mr. Spencer's consent was not voluntary, this Court disagrees.

Consent is voluntary when it is "unequivocal, specific, intelligently given, and free from duress or coercion." *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011). "Whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *see also Beauchamp*, 659 F.3d at 571. The government must establish voluntariness by a preponderance of the evidence, with evidence that is clear and positive. *Beauchamp*, 659 F.3d at 571.

There are no bright line rules to follow when assessing the totality of the circumstances, but several factors are considered. *Id.* at 572. "First, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her

7

constitutional rights." *Id.* A court should also consider "the use of coercive or punishing conduct by the police; and indications of more subtle forms of coercion that might flaw [an individual's] judgment." *Id.* (internal citations omitted). The defendant "must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police in order to invalidate consent." *United States v. Elkins*, 300 F.3d 638, 648 (6th Cir. 2002).

Magistrate Judge Pham found that "[a]t no time did the officers engage in conduct that could be considered coercive." (ECF No. 35 at PageID 220.) Accordingly, Magistrate Judge Pham concluded that "based upon the totality of the circumstances, the officers lawfully entered the residence because they had J.T. Spencer's consent." (*Id.* at PageID 219.)

Mr. Spencer testified at the evidentiary hearing, and nothing in his testimony, and nothing in the testimony of the officers, suggests that his consent to enter the residence was not given voluntarily. Nothing in the record suggests that Mr. Spencer's age, intelligence, or education would hinder his ability to understand his constitutional rights. The record does not reflect that the officers had their firearms drawn, spoke in forceful tones, or made unlawful threats. Under the totality of the circumstances, this Court agrees with Magistrate Judge Pham that the government showed, based on clear and positive testimony, that Mr. Spencer gave consent to enter the residence and that such consent was "unequivocal, specific, intelligently given, and free from duress or coercion." *Beauchamp*, 689 F.3d at 571. Accordingly, Defendant's objection is **OVERRULED**.

Finally, Defendant objects to Magistrate Judge Pham's legal conclusion that the officers lawfully seized Defendant's firearm pursuant to the plain view doctrine. Again, this objection appears to be an objection to the Magistrate Judge's credibility determination and proposed

findings of fact, rather than an objection to the legal conclusion based on that credibility determination and the proposed findings of fact.

A well-delineated exception to the warrant requirement is that law enforcement officers may seize evidence of a crime that is in "plain view." *See Horton v. California*, 496 U.S. 128, 133–34 (1990); *Coolidge v. New Hampshire*, 403 U.S. 443, (1971). Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minn v. Dickerson*, 508 U.S. 366, 375 (1993) (citing *Horton*, 496 U.S. at 136-37).

First, the officers were lawfully in a position to view the firearm because this Court has found that they had Mr. Spencer's consent to be inside the residence, and they observed the firearm through an open dresser drawer. Second, the firearm's incriminating character was immediately apparent because Defendant was being arrested for threatening to shoot a police officer. Finally, the officers had a lawful right of access to the firearm because of Mr. Spencer's consent to enter the residence. Accordingly, seizure of the firearm was proper under the plain view doctrine and Defendant's objection is **OVERRULED**.

## **CONCLUSION**

Based on the foregoing, the Court **OVERRULES** Defendant's objections to the Report. To the extent that Defendant's objections did not reach a finding of fact or conclusion of law in the Report, the Court finds no clear error. Therefore, the Court **ADOPTS** the Report, and Defendant's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**, this 22nd day of May, 2019.

                                                   s/ Mark S. Norris
                                                   MARK S. NORRIS
                                                   UNITED STATES DISTRICT JUDGE